## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| MARYANN RUDZINSKAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV424-009 |
| | ) | |
| RETRACTABLE | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

Currently before the Court are several motions related to the parties' expert witnesses.  First, Defendant seeks exclusion of Plaintiff's expert John Odom, M.D.  Doc. 32.  Plaintiff opposes, doc. 39, and the parties dispute whether the Court should consider that untimely opposition, docs. 40, 51, & 58.  Meanwhile, Plaintiff seeks exclusion of Defendant's experts John Borsa, doc. 34, and Jordan Duesman, doc. 35, and Defendant opposes both motions, docs. 37 & 38.  Plaintiff replied in support of her motion to exclude John Borsa.  Doc. 49.  All of these matters are ripe for disposition.

## Background

Plaintiff Maryann Rudzinskas alleges that on two separate occasions when using a VanishPoint syringe manufactured by the Defendant Retractable Technologies, Inc. ("RTI"), the "needle broke off." Doc. 1-1 at 3-4. On the first occasion, when her husband administered a B-12 vitamin shot she alleges the needle "shot through her buttock and became lodged under her skin." *Id.* at 3. She went to the hospital, where a physician told her she'd have to undergo surgery to remove the needle. *Id.* at 4. Although she was prepped for surgery that day, the surgery did not go forward. *Id.* She was, however, informed that it was "imperative that she follow up with a general surgeon," and referred to Dr. John Odom. *Id.* Dr. Odom "attempted to remove the needle from her right buttock," but the surgery was "unsuccessful." *Id.* She contends the needle remains in her buttock. *Id.*

On the second occasion, approximately two months later, her husband again administered a B-12 vitamin shot, this time in Plaintiff's left arm, and she alleges the needle again "shot through her arm and became lodged under her skin." Doc. 1-1 at 4. She went back to the hospital but "imaging could not detect the needle, and she was discharged

without further treatment." *Id.* at 5. She again consulted with Dr. Odom, who could not locate the needle, but "believed that the needle had traveled and its size and penetration caused the needle to be non visible rather than absent." *Id.* Dr. Odom informed her there was "nothing further he could do with regard to either of the lodged needles." *Id.*

Plaintiff filed this lawsuit against RTI in the State Court of Chatham County, Georgia, alleging it breached its duty of care, was negligent, and "is liable for tortious acts and omissions" including "manufacturing, distributing and selling of a defective product," "failure to warn purchasers of potential danger of product," and "failing to inspect its products for defects." Doc. 1-1 at 5. Defendant removed the case to this Court, *see* doc. 1, filed its Answer, doc. 10, and the parties engaged in discovery, *see* docs. 20, 27.

During discovery, Plaintiff identified Dr. John Odom, her treating physician, as an expert witness. *See* doc. 32-8. Defendant moves to exclude Dr. Odom as unqualified and his opinions as unreliable. Doc. 32 at 3-11. On the other side of the case, Defendant identified Dr. John Borsa, a diagnostic and interventional radiologist, as a retained expert.

*See* doc. 34 at 49, 53-74 (Expert Report).[1]  Plaintiff moves to exclude his testimony based on an allegedly deficient expert report, *id.* at 7-9, a lack of qualifications and methodology, *id.* at 9-12, and as unhelpful, *id.* at 12. Defendant also disclosed Jordan Duesman as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(C), since he was not retained or specially employed to provide his testimony.  *See* doc. 35 at 10.  Plaintiff argues Duesman should be excluded because his expert report is insufficient, because Defendant instructed Duesman not to answer certain questions during his deposition, and because Defendant has not met its burden of demonstrating that Duesman meets the requirements of Federal Rule of Evidence 702.  *Id.* at 6-7.  After discussing the applicable legal standards, the Court addresses each expert, and the opposing party's challenges to that expert, in turn.

---

[1]  Plaintiff filed the exhibits to her Motions in the same filing as the Motions.  *See* docs. 34 & 35.  Not only did this make it difficult for the Court to efficiently review Plaintiff's Motions, but it also does not comply with the Court's Administrative Procedures for Filing, Signing, and Verifying Pleadings and Papers by Electronic Means.  The District Judge's Standing Order makes clear that counsel is required to comply with these procedures.  *See* Standing Order for All Cases Pending Before District Judge R. Stan Baker, Section I.B.1.  The Court notes that Plaintiff's Response to Defendant's Motion for Summary Judgment, which is pending before Chief Judge Baker, includes the same filing defect.  *See* doc. 42.

## Legal Standards

### A.    Federal Rules of Civil Procedure 26 and 37

The Federal Rules of Civil Procedure require a party seeking to introduce expert testimony at trial to disclose the identity of the expert and, for retained experts, an expert report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications . . . ; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(A)-(B).  For non-retained expert witnesses, the party must disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).  These disclosures must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).  A party has a continuing obligation to supplement its expert's report.  Fed. R. Civ. P. 26(e)(2).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

### B.    Federal Rule of Evidence 702

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court interpreted Federal Rule of Evidence 702 which governs expert testimony.  The Supreme Court "made abundantly clear" that Rule 702 "compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert*, 509 U.S. at 589 n. 7, 597) (emphasis omitted).  The Supreme Court later held that "Daubert's general holding–setting forth the trial judge's general 'gatekeeping' obligation–applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing Fed. R. Evid. 702).  Having incorporated these decisions, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)    the testimony is based on sufficient facts or data;

(c)    the testimony is the product of reliable principles and methods; and

(d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Eleventh Circuit has established a three-pronged inquiry encompassing the requirements of Daubert, its progeny, and Rule 702. Under this inquiry, a court determining the admissibility of expert testimony must consider whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (citations omitted); *see also Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021).  The proponent of the expert bears

the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Daubert*, 509 U.S. at 592, n. 10.

For the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260-61; *see also* Fed. R. Evid. 702 ("A witness may be qualified as an expert by "knowledge, skill, experience, training, or education."). In determining qualification, courts generally look to a proposed expert's education and experience and ask whether the witness's intended testimony is sufficiently within his or her area of expertise. *See Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). However, "the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261 (emphasis in original).

Consequently, reliability, the second prong, "remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. The Supreme Court in *Daubert* "set out a list of 'general observations' for determining whether expert testimony is sufficiently

reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors or observations inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful. As a result, 'the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Frazier*, 387 F.3d at 1262 (quoting *Kumho Tire*, 526 U.S. at 152). "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1261 (emphasis in original).

Finally, expert opinion testimony must also assist the trier of fact. Fed. R. Evid. 702(a). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262 (citation omitted). Proffered expert testimony generally will not help the trier of fact, and is inadmissible, "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) (citation omitted). Stated differently, expert testimony that offers something "beyond the understanding and experience of the average citizen" helps the trier of fact and can be admitted. *Id.* (quoting *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Additionally, to be helpful, the expert's testimony must be relevant. *Daubert*, 509 U.S. at 591-92. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591 (internal citation and quotations omitted).

## Analysis

### A.    Plaintiff's Expert Dr. John Odom

Before turning to Defendant's challenges to Dr. Odom's expert testimony, the Court must first resolve the parties' dispute over Plaintiff's untimely response to those challenges.   Plaintiff filed her response to the Defendant's Motion to Exclude Dr. Odom's Expert Testimony on December 2, 2024, doc. 39, six days after it was due, *see* doc. 32; S.D. Ga. L. Civ. R. 7.5.  She contemporaneously filed a Motion for Leave to File an Out of Time Response pursuant to Federal Rule of Civil Procedure 6(b)(1)(B).  Doc. 40.  That Motion explains the delay was "due to clerical errors and oversights by Plaintiff's counsel" resulting from counsel's paralegal's absence and asserts the belated filing should be accepted based on counsel's excusable neglect.  *Id.* at 2-4; *see also* doc. 58 at 1.  Defendant disagrees, arguing Plaintiff "proffers no evidence in support of the reason for her counsel's delay in filing" except for pointing to Plaintiff's counsel's paralegals health issues and absence from work.  Doc. 51 at 4.  On balance, considering the relatively short delay of six days and Plaintiff's counsel's explanation that the missed deadline was an oversight caused by a key staff member's hospitalization, the Court

finds the delay was a result of counsel's excusable neglect. *See* Fed. R.

Civ. P. 6(b)(1)(B). Therefore, the Motion for Leave to File is **GRANTED**,

doc. 40, and the Court will consider Plaintiff's Response, doc. 39.

The Court now turns to the parties' substantive dispute. In Dr.

Odom's Report, he opines:

1. For safe use, a medical needle should be designed and manufactured so as not to break off from syringe. However, my examinations revealed that the subject needle did just that. The needle of the subject syringe broke off from the syringe and lodged into the Plaintiff's body on two separate occasions. These events directly injured the Plaintiff.

2. It is my opinion, to a reasonable degree of professional certainty, that the subject needles separated from the syringes, due to manufacturing issues and a defective product/design. My conclusions are based on my experience and review and consideration of the evidence and materials identified in this report, along with the results of the X-Rays and other assessments of the Plaintiff.

Doc. 32-8 at 4. He further opines that he is "100 percent certain that

needles from these VanishPoint 'safety syringes' lodged into Ms.

Rudzinsaks' body on two separate occasions and are still located in her

body today." *Id.* at 3. Defendant moves to exclude his opinions and

testimony under Rule 702, arguing he is unqualified and that his opinions are not based on sufficient facts or data. Doc. 32 at 3.

Defendant first argues that Dr. Odom is unqualified to provide opinion testimony regarding "any alleged negligent design, manufacturing, or standard of care in manufacturing," and therefore any opinions about design, manufacturing, or engineering defects should be excluded. Doc. 32 at 5. As Defendant correctly points out, Dr. Odom is not a manufacturing expert, a fact which Plaintiff's counsel stipulated during Dr. Odom's deposition. *See* doc. 32-5 at 16; *see also id.* at 21 (Dr. Odom agreeing "wholeheartedly" that he is not a manufacturing expert). Plaintiff does not meaningfully dispute this challenge, conceding Dr. Odom is not a design and manufacturing expert and does not know "the specifics regarding the actual engineering involved in the manufacturing and design process." Doc. 39 at 2.

Plaintiff does, however, suggest that Dr. Odom may testify about the product itself since he has previously used it in his capacity as a general surgeon, doc. 39 at 2, but that experience is not sufficient to qualify him to opine on "manufacturing issues" or a "defective product/design." As this Court has made clear, "qualifications must

13

correspond to the subject matter of [the expert's] proffered testimony." *Evanston Ins. Co. v. Xytex Tissue Servs., LLC*, 378 F. Supp. 3d 1267, 1278 (S.D. Ga. 2019). Plaintiff has not borne her burden of showing that Dr. Odom is "qualified to testify competently" about the design, manufacturing, or alleged defect of the at-issue product. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). Therefore, Defendant's request to exclude his opinions about the design and manufacturing of the at-issue syringes is **GRANTED**. Doc. 32, in part. Dr. Odom's opinion that "the subject needles separated from the syringes, due to manufacturing issues and a defective product/design," and any related testimony, is **EXCLUDED**.

Defendant also challenges, on reliability grounds, Dr. Odom's opinion that he is "100 percent certain that needles from these VanishPoint 'safety syringes' lodged into Ms. Rudzinskas' body on two separate occasions and are still in her body today." Doc. 32 at 6. Because the circumstances surrounding the two incidents are different, the Court must analyze this opinion by breaking it down into its two distinct components. In formulating his opinion as to the existence of a needle in Plaintiff's "right buttock region," (the "First Needle"), Dr. Odom

14

consulted medical imaging, or a report of that imaging, and performed surgery on the area. *See* doc. 32-8 at 3; doc. 32-5 at 12, 22-23. He opines that the imaging shows a "foreign object" with measurements "consistent with a needle from a VanishPoint 'safety syringe.'" Doc. 32-8 at 3.

Defendant contends Dr. Odom's opinion about the existence of the First Needle is unreliable. *See* doc. 32 at 6-9. It first argues he is "incorrect" that the measurements located on imaging of that area are consistent with a needle from a VanishPoint safety syringe. *Id.* at 6-7. It points to its own expert's testimony and expert report that the imaging is inconsistent with the presence of a VanishPoint syringe needle. *Id.* at 7; *see also* doc. 32-4 (Dr. Borsa's Report). However, the Court may not exclude an expert "because it believes one expert is more persuasive than another expert." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n. 7 (11th Cir. 2005). Additionally, this is not an attack on Dr. Odom's methodology, but on his conclusion. That is not the focus of the *Daubert* analysis, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595.

Defendants also challenge Dr. Odom's opinion about the First Needle because of his confusion over whether he consulted an x-ray or x-

ray report or an ultrasound or ultrasound report. *Id.* at 7. While he referred, both in his report and during his deposition, to an "x-ray" or "x-ray report," *see* doc. 32-5 at 22-23; doc. 32-8 at 3, Plaintiff's counsel later explained that he was referring instead to an ultrasound report, *see* doc. 32-6. Dr. Odom's misidentification of the imaging report he reviewed prior to performing exploratory surgery on Plaintiff does not render his review of the report itself unreliable. This is the type of credibility determination best left for the jury. *See Johnson v. Carnival Corp.*, 533 F. Supp. 3d 1196, 1201 (S.D. Fla. 2021) ("Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility.").

Next, Defendant critiques Dr. Odom's opinion as to the existence of the First Needle in Plaintiff's buttocks because he "has never directly seen the alleged First Needle." Doc. 32 at 7. Instead, he "claims he saw this needle indirectly, under fluoroscopy . . . ." *Id.*; *see also* doc. 32-5 at 19 (Dr. Odom's testimony that he "stared at it under fluoroscopy for the better part of an hour"). It rebuts his claim because the location does not align with the Plaintiff's husband's testimony about where he administered the injection, because he did not order additional imaging,

and because Dr. Odom found the needle difficult to locate during the procedure. Doc. 32 at 7-8. These are not attacks on his methodology— reviewing imaging reports and conducting an exploratory surgery with fluoroscopy. These are, instead, additional attacks of his credibility better suited for cross-examination. *See Johnson*, 533 F. Supp. 3d at 1201 (citing, *inter alia*, *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). Defendant's request to exclude Dr. Odom's opinion about the presence of the First Needle in Plaintiff's buttocks is, therefore, **DENIED**. Doc. 32, in part.

Dr. Odom also opines that he is "certain" that another needle is present in Plaintiff's left arm (the "Second Needle"). Doc. 32-8 at 3. This opinion is based on far less actual methodology than the first. Related to the Second Needle, Plaintiff visited Dr. Odom's office and reported that "the same thing had happened," and another needle "had been propelled into her arm." Doc. 32-5 at 7. She did not bring the syringe with her to the office visit. *Id.* Dr. Odom could not say, definitively, that the second syringe was manufactured by the Defendant, other than taking Plaintiff's word for it. *Id.* at 7-8. He performed an x-ray of her arm, but it "did not reveal the needle." *Id.* at 8. Because he could not see the

Second Needle on the imaging, and did not know "whether a needle was actually there or not," he did not perform any exploratory procedure on her arm. *Id.* at 24-25. Based on this information, he opines with "100 percent" certainty that the Second Needle, from a VanishPoint "safety syringe," is lodged in her arm and remains there today. Doc. 32-8 at 3. His only support for this opinion is that the Second Needle "was not visible on the x-ray due to the depth of the object." *Id.*

As Defendant points out, Dr. Odom appears to base his opinions regarding the Second Needle "on mere speculation." Doc. 32 at 10. There is no methodology identified in either his report or his deposition testimony to support his conclusion, with 100 percent certainty, that a VanishPoint needle he cannot see on x-ray and has not seen during any exploratory procedure is lodged in Plaintiff's arm. This type of "scientifically unsupported leap of faith" is not sufficient to pass the gate of *Daubert* and Rule 702. *Rink*, 400 F.3d at 1292. There is simply no methodology employed, other than taking his patient's word for it, and the wholly speculative opinion must be excluded. *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256-57 (11th Cir. 2002) (affirming trial court's exclusion of unreliable and speculative expert opinion).

Therefore, Defendant's request to exclude Dr. Odom's opinion about the Second Needle is **GRANTED**.  Doc. 32, in part.  Dr. Odom's opinion and related testimony about the certain existence of a needle from a VanishPoint syringe in Plaintiff's arm is **EXCLUDED**.  However, related to the Second Needle, Dr. Odom may offer testimony about his treatment of Plaintiff, including his review of the x-ray of Plaintiff's arm and his decision not to perform an exploratory surgery.

### B.    Defendant's Expert Dr. John Borsa

Defendant's radiology expert, Dr. John Borsa, offers two opinions in this case:

1. The medical imaging produced in this case is not consistent with a finding that a VanishPoint syringe needle lodged in Ms. Rudzinskas' body.

2. A different medical procedure could have determined whether a needle was present in her body or not.

Doc. 34 at 55.

Plaintiff first seeks to exclude Dr. Borsa under Federal Rule of Civil Procedure 37, arguing his expert report is deficient.  Doc. 34 at 7.  Plaintiff contends Dr. Borsa's report contains opinions that are inconsistent with his deposition testimony, since the report includes statements about what her treating physicians "should have done," but

during his deposition he stated he was not offering any "standard of care" opinions. *Id.* at 8-9. Dr. Borsa's report explains his testimony and opinions "encompass Plaintiff's medical imagining produced in this matter and the presence or absence of foreign objects within Plaintiff's body." *Id.* at 49. While his second opinion, that "[a] different medical procedure could have determined whether a needle was present in her body or not," does refer to what Plaintiff's treating physicians should or could have done to confirm the presence of a needle in her body, he does not opine that the failure to do so was in breach of any applicable standard of care. *Id.* at 55-56. Therefore, his deposition testimony does not contradict his expert report. Any request to exclude his expert testimony on this basis is **DENIED**. Doc. 34, in part.

Plaintiff also argues Dr. Borsa's expert report is deficient because it did not include his opinion about the quality of the imaging performed. Doc. 34 at 9. During his deposition, Dr. Borsa referred to an x-ray as having "perfect technique." *Id.* at 33. Plaintiff argues this opinion is missing from the report. *Id.* at 9. In response, Defendant points to the portion of Dr. Borsa's report where he discusses his examination of the imaging and finds them to be "properly exposed." Doc. 37 at 4 (citing doc.

34 at 55-56). During his deposition, Dr. Borsa elaborated on the "perfect technique" comment by explaining he "can tell if an x-ray has been developed properly or not." Doc. 34 at 33. Therefore, Plaintiff's argument is meritless. Even if the report could be considered deficient for its use of a different phrase than Dr. Borsa used during his deposition, Plaintiff had the opportunity to fully question Dr. Borsa about his opinion of the x-ray and the basis for it, so any confusion resulting from the differing phrases was harmless. *Id.*; *see also* Fed. R. Civ. P. 37(c) (exclusion is not proper where the failure to disclose was "substantially justified or harmless"). Exclusion under Rule 37 is not warranted, and Plaintiff's request is **DENIED**. Doc. 34, in part.

Plaintiff also challenges Dr. Borsa's opinions under Rule 702 and *Daubert*. She first argues he is not qualified to offer any of his proffered opinions because he "is simply a radiologist," is not a surgeon, and has not used the syringes at issue in this case. Doc. 34 at 10. As Defendant highlights, Dr. Borsa is a board-certified diagnostic and interventional radiologist with 27 years of experience. Doc. 37 at 6. As part of that experience, he "looks for foreign bodies in patients every day." *Id.* He is qualified to evaluate the medical imaging involved in this case. Plaintiff's

request to exclude him based on a lack of qualifications is **DENIED**. Doc. 34, in part.

Next, Plaintiff challenges Borsa's methodology, arguing he does not apply any reliable methodology to arrive at his opinions, instead relying on his own "trust me testimony." Doc. 34 at 10-12. As mentioned above, Dr. Borsa first opines that the medical imaging "is not consistent with a finding that a VanishPoint syringe needle lodged in Ms. Rudzinskas' body." Doc. 34 at 55. His Report explains that he formulated his opinion as to the First Needle by reviewing Plaintiff's "sonographic imaging" and comparing the "echogenic focus" to "the smallest available VanishPoint syringe needle." *Id.* He concludes that the imaging produced does not "conclusively indicate what the echogenic focus is," but that it is "inconsistent with a VanishPoint syringe needle." *Id.* Similarly, related to the Second Needle, Dr. Borsa reviewed the "fluoroscopic imaging and plain film radiography of [Plaintiff's] left upper extremity" and opines it "does not demonstrate the presence of a metallic/radiopaque foreign body." *Id.* As Defendant compellingly argues, Dr. Borsa's review of the medical imaging is a sufficient methodology for a reviewing radiologist to employ. *See* doc. 37 at 8-9. Any critiques on *how* Dr. Borsa employed

this methodology, including Plaintiff's criticism that he has not personally examined her, is for cross-examination.

Dr. Borsa also opines that "[a] different medical procedure could have determined whether a needle was present in her body or not." Doc. 34 at 56. He then offers his opinion of the types of medical procedures that could have confirmed the presence of a needle in Plaintiff's body. *Id.* Plaintiff's challenge to this opinion is that "Borsa has never even seen Ms[.] Rudzinsaks much less requested that these tests be done on her." *Id.* at 11. Dr. Borsa reliably applied his experience locating foreign objects in people's bodies, identified the various medical procedures that could be used to confirm the presence of a foreign object, and observed that those procedures were not employed in this case. That testimony meets the requirements of Rule 702. Therefore, Plaintiff's request to exclude Dr. Borsa's opinions on reliability grounds is **DENIED**. Doc. 34, in part.

Finally, Plaintiff challenges the helpfulness of Dr. Borsa's testimony, arguing Defendant's counsel "can show the imaging of Plaintiff and just as easily ask the jury to simply 'look for the needle' in closing." Doc. 34 at 12. Reading and interpreting medical imaging is the

type of matter "beyond the understanding of the average lay person."
*Cook*, 402 F.3d at 1111.  Dr. Borsa's testimony about Plaintiff's imaging
is, therefore, helpful.  Plaintiff's request to exclude Dr. Borsa's opinions
as unhelpful is, therefore, **DENIED**.  Doc. 34, in part.

## C.   Defendant's Expert Jordan Duesman

Defendant's expert Jordan Duesman is the "manufacturing,
engineering and validation manager" for Defendant RTI, doc. 35 at 39,
and is expected to testify about "the specifications for VanishPoint
syringes, their manufacturing processes, testing, and validation."  *Id.* at
10.   He also served as Defendant's corporate representative for
Defendant's Rule 30(b)(6) deposition.  Doc. 38 at 1 n. 1. Defendant's
disclosure summarizes Duesman's testimony as:

- VanishPoint syringes are manufactured in accordance with
  regulatory requirements, ISO standard as well as internal
  standards resulting from thirty years of manufacturing;

- Each VanishPoint syringe needle is extensively tested to
  minimize risk of separation;

- The structure and mechanisms underlying a VanishPoint
  syringe and that, as structured, a VanishPoint syringe
  spring or any other components thereof, does not apply, or
  allow for, forward movement of the needle (towards/into
  the patient);

- It cannot be determined, to a reasonable degree of
  professional certainty, whether a VanishPoint syringe

> deviated from its specifications without (1) knowing the model of syringe at issue, (2) knowing its date of manufacture, and (3) physically examining the syringe itself.

Doc. 35 at 10.

Plaintiff argues Duesman should be excluded from testifying at trial because Defendant's disclosure does not comply with the requirements of Rule 26(a)(2)(C). *See* doc. 35 at 6-7. The information provided in Defendant's disclosure provides a sufficient "summary" of the facts and opinions on which Duesman plans to testify. *See id.* at 10. Additionally, Plaintiff had the opportunity to depose Duesman, *see id.* at 36-49, and has not pointed to any particular testimony that deviates from the summary provided by Defendant. *See* doc. 35. The disclosure is not deficient, and exclusion under Rule 37 would be inappropriate. Plaintiff's request to exclude Duesman as a sanction under Rule 37 is, therefore, **DENIED**. Doc. 35, in part.

Plaintiff also argues Duesman should be excluded from testifying as an expert at trial because "Plaintiff was prohibited from any insight as to what Duesman relied upon at all in forming his opinions as defense counsel instructed Duesman not to reveal what he had reviewed in preparing his opinions or preparing for his deposition testimony." Doc.

35 at 7.  In support of this argument, Plaintiff points to four pages of the deposition transcript where, in response to Plaintiff's counsel's questioning about what documents he reviewed with Defendant's attorneys, those attorneys objected asserting privilege.  *Id.* (citing *id.* at 39, 41).  As the deposition transcript and Defendant's response reveal, the attorneys "made clear that Defendant did not object to questions eliciting whether Mr. Duesman had seen any particular document or category of document, nor did Plaintiff's counsel ask what documents Mr. Duesman relied on in forming his opinions."  Doc. 38 at 5; *see also* doc. 35 at 39, 41.  Instead, they asserted privilege and attorney work product over "which documents Defendant's counsel believes to be most probative," *i.e.*, the identification of the documents Defendant's counsel reviewed with Mr. Duesman before his deposition.  Doc. 38 at 4; doc. 35 at 41.

Defendant aptly points out that Plaintiff did not raise any discovery dispute over the objections during the discovery period.  Doc. 38 at 5. This strategy, of bypassing the Court's procedures for addressing discovery disputes and waiting until *Daubert* motions to raise the issue, is disfavored.  *See, e.g., Kondragunta v. Ace Doran Hauling & Rigging*

*Co.*, 2013 WL 1189493, at *7 (N.D. Ga. Mar. 21, 2013), *abrogated on other grounds by Cedant v. United States*, 75 F.4th 1314, 1326 n. 14 (11th Cir. 2023). Moreover, there is nothing to indicate Defendant's assertion of privilege stymied Plaintiff's ability to explore Duesman's opinions and the basis for those opinions, the issues that are appropriately before the Court at this stage in the proceedings. *See* doc. 38 at 5 (asserting Plaintiff's counsel did not "ask what documents Mr. Duesman relied on in forming his opinions). Therefore, exclusion of Mr. Duesman's testimony because of Defendant's arguably improper deposition objections is not warranted. Plaintiff's request is **DENIED**. Doc. 35, in part.

Plaintiff's final challenge to Duesman's testimony is vague and conclusory. Plaintiff argues that Defendant, as the proponent of Duesman's expert testimony, "has not satisfied the burden of demonstrating that Duesman is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." Doc. 35 at 7 (internal quotations omitted). That is the entire argument. *Id.* Plaintiff does not identify any specific failings with Duesman's qualifications or

methodology or articulate any reason why his testimony would not be helpful to the jury. *Id.*

In response, Defendant explains Duesman has been working "for seventeen years in positions related to manufacturing and validation." Doc. 38 at 6. In his current role, he is "responsible for validation compliance in accordance with ISO and FDA regulation on all products." *Id.* He has a relevant educational background, too, with a degree in engineering. *Id.* He is qualified to testify on issues related to the design and manufacture of VanishPoint syringes, and to provide the opinions summarized in Defendant's disclosure. Defendant also argues that Duesman's opinions are based on the application of his education and experience to the allegations in Plaintiff's Complaint, and identifies specific testimony to support its argument. Doc. 38 at 6-7. Defendant sufficiently demonstrates the reliability of Duesman's testimony in the fact of Plaintiff's bare objection. Finally, Defendant articulates why Duesman's testimony will assist the trier of fact. *Id.* at 7-8. Defendant's response is sufficient to carry its burden under Rule 702. Therefore, Plaintiff's request to exclude Duesman's testimony from trial is **DENIED**. Doc. 35.

## Conclusion

Plaintiff's Motion for Leave to File Out of Time Response to Defendant's *Daubert* Motion to Exclude John Odom M.D.'s Expert Testimony is **GRANTED**. Doc. 40. Defendant's Motion to Exclude Dr. Odom's testimony is **GRANTED IN PART** and **DENIED IN PART**. Doc. 32. Dr. Odom's opinion that "the subject needles separated from the syringes, due to manufacturing issues and a defective product/design," and any related testimony, is **EXCLUDED**. Dr. Odom's opinion and related testimony about the certain existence of a needle from a VanishPoint syringe in Plaintiff's arm is **EXCLUDED**.

Plaintiff's Motion to Exclude Opinions of Defendant's Expert John Borsa is **DENIED**. Doc. 34. Plaintiff's Motion to Exclude Opinions of Defendant's Expert Jordan Duesman is **DENIED**. Doc. 35.

**SO ORDERED**, this 12th day of June, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA