IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARYANN RUDZINSKAS,

    Plaintiff,

v.

RETRACTABLE TECHNOLOGIES, INC.,

    Defendant.

CIVIL ACTION NO.: 4:24-cv-009

**O R D E R**

Plaintiff Maryann Rudzinskas brought this action for negligent manufacturing and negligent failure to warn against Defendant Retractable Technologies, Inc., alleging that the needle from Defendant's VanishPoint syringes defectively broke off, shot into her, and lodged under her skin. (Doc. 1-1.) After completing discovery, Defendant filed a Motion for Summary Judgment. (Doc. 33.) Plaintiff filed a Response to this Motion after the Court's deadline had expired. (Doc. 41.) Then, in light of the untimeliness, Plaintiff filed a Motion for Leave to File Out of Time Response to Defendant's Motion for Summary Judgment. (Doc. 44.) Defendant filed a Reply to Plaintiff's Response to its Motion for Summary Judgment. (Doc. 52.)

Both Defendant's Motion for Summary Judgment, (doc. 33), and Plaintiff's Motion for Leave, (doc. 44), are ripe for review. For the below reasons, the Court **GRANTS** Plaintiff's Motion for Leave, (doc. 44), and **GRANTS** Defendant's Motion for Summary Judgment, (doc. 33).

**BACKGROUND**

The Court derives the facts below from the parties' submissions and the summary judgment record. (Docs. 1, 1-1, 33, 41, 42, 44 & 52.) Under Local Rule 56.1, when a fact is undisputed, the Court includes the fact. For disputed facts, the Court reviews the record to determine if a material dispute exists. When the other party's response reflects the record cited more accurately, the Court modifies the proposed fact and cites the record. The Court also excludes immaterial facts, those stated as an issue or legal conclusion, those not supported by a citation to evidence, or those that the record citation fails to support. And, where appropriate, the Court includes facts drawn from its review of the record. See Williams v. Wal-Mart Stores E., LP, 661 F. Supp. 3d 1264, 1266 (N.D. Ga. 2023). These facts are undisputed unless otherwise stated.

Plaintiff is a citizen of Georgia. (Doc. 1, p. 2; doc. 1-1, p. 3.) Defendant is a Texas corporation with its principal place of business located in Little Elm, Texas. (Doc. 1, p. 2; doc. 1-1, p. 3.) Defendant manufactures, distributes, and sells VanishPoint syringes. (Doc. 33-1, p. 1; doc. 42, p. 1.) Defendant markets all VanishPoint syringes as containing the common feature that, once its plunger handle is fully depressed during use, its needle automatically retracts from the patient into the barrel of the syringe. (Doc. 33-1, p. 1; doc. 42, p. 2.)

For at least the last six or seven years, Plaintiff's husband, Joseph Rudzinskas, has administered prescribed vitamin B-12 shots to Plaintiff. (Doc. 33-1, p. 2; doc. 42, p. 3.) In January 2023, Mr. Rudzinskas administered an injection to the middle of Plaintiff's buttock. (Doc. 33-1, p. 2; doc. 42, p. 8.) Although Plaintiff cannot recount the exact brand of needles she has used over the years, she maintains that she is certain Mr. Rudzinskas injected her using a VanishPoint syringe on this occasion. (Doc. 33-1, p. 2; doc. 42, p. 8.) Mr. Rudzinskas testified that during the January 2023 injection that he "[ga]ve the shot, pull[ed] it out, and the needle[ was] gone." (Doc. 33-1, p.

2; doc. 42, p. 9; doc. 33-4, p. 7.) He also testified that the "needle got stuck in [Plaintiff's] butt[ock]." (Doc. 42, p. 9; doc. 41, p. 133.) Plaintiff testified during her deposition that, when Mr. Rudzinskas gave her the January 2023 injection, the needle "shot into me like a slingshot" and "[w]e both looked at the syringe . . . . [and t]here was no needle in the syringe . . . ." (Doc. 41, p. 21; see also id. at p. 22.)

Following the January 2023 injection, Plaintiff sought immediate treatment at the hospital. (Doc. 33-1, p. 3; doc. 42, p. 11.) Dr. Jun Lee performed an ultrasound of Plaintiff's buttock on January 19 and wrote in his report that the ultrasound showed a "linear echogenic focus . . . in the right buttock" with measurements equating to 4 millimeters x 1 millimeter x 4 millimeters. (Doc. 33-1, p. 3; doc. 42, p. 11.) Dr. Lee also wrote in his report that his "clinical indication" was a "[n]eedle broke off in right buttock." (Doc. 42, p. 11; see also doc. 41, p. 393.) After having her ultrasound taken, at the direction of hospital personnel, Plaintiff went to see surgeon Dr. John Odom to have the alleged needle surgically removed. (Doc. 33-1, p. 4; doc. 42, p. 13.) Dr. Odom performed surgery on Plaintiff, putting her under anesthesia, and making an incision into her buttock. (Doc. 33-1, p. 4; doc. 42, p. 17.) Dr. Odom could not extract the alleged needle and abandoned the surgery. (Doc. 33-1, p. 4; doc. 42, p. 17.)

Plaintiff alleges that, on or about the end of March 2023, Mr. Rudzinskas administered another B-12 shot to her using a VanishPoint syringe—this time injecting Plaintiff in her left arm. (Doc. 1-1, p. 4; doc. 1, p. 3.) Plaintiff alleges that, again, the needle broke off, shot through her arm and lodged under her skin. (Doc. 1-1, p. 4; doc. 1, p. 3.) Dr. Odom performed an x-ray of Plaintiff's arm and did not see a needle. (Doc. 33-1, p. 5; doc. 42, p. 19.) Dr. Odom did not perform surgery on Plaintiff's arm. (Doc. 33-1, p. 9; doc. 42, p. 32.)

3

Plaintiff sued Defendant in the State Court of Chatham County, alleging that Defendant "breached its duties of care, was negligent, and is liable for tortious acts and omissions, which include but are not necessarily limited to, manufacturing, distributing and selling of a defective product; failure to warn purchasers of potential danger of product; generally failing to inspect its products for defects, thereby causing Plaintiff to have to undergo surgery to have the needle point removed from her right buttock, thereby causing emotional and physical suffering to Plaintiff." (Doc. 1-1, pp. 5–6.) Defendant removed the action to this Court based on diversity-of-citizenship jurisdiction. (Doc. 1-1; see also 28 U.S.C. § 1332(a).)

After filing the lawsuit, Plaintiff produced to Defendant what she represented to be the two syringes that dislodged their needles into her in January and March of 2023, along with several other syringes. (Doc 33-1, p. 6; doc. 42, pp. 23–24.) However, all the syringes Plaintiff sent to Defendant still contained needles. (Doc. 33-1, p. 7; doc. 42, p. 25.) Plaintiff now claims that, "[a]t the time that these syringes were produced, [she] was under the impression that these syringes were in fact th[e] subject syringes[,] however, Plaintiff later realized that she had inadvertently set aside the wrong syringes." (Doc. 42, p. 25.) Plaintiff maintains that "[t]he actual subject syringes that injured [her] did not have the needles in them—the needles from those syringes are logged [sic] inside Plaintiff's body." (Id.) According to Plaintiff, she no longer knows where the syringes from the January and March 2023 injections are. (Doc. 33-1, p. 7; doc. 42, p. 26.)

Defendant identified Jordan Duesman, a representative of Defendant, as a witness expected to offer expert opinions on "the specifications for VanishPoint syringes, their manufacturing processes, testing, and validation." (Doc. 35, p. 10; see also doc. 61, pp. 24–28.) Defendant disclosed that Duesman is expected to testify that every VanishPoint syringe is extensively tested before it is sold and pull-tested to ISO standards to minimize risk of needle separation. (Doc. 33-

4

1, p. 10; doc. 42, p. 37; see also doc. 35, p. 10.)  The parties deposed Duesman during discovery and he testified that VanishPoint syringes are manufactured in a way that places no forward force on the syringe cannula and that it would therefore "defy physics" for a VanishPoint needle to shoot forward into a patient's body.  (Doc. 33-3, pp. 10–11; doc. 42, pp. 37–38; see also doc. 35, p. 45.)  Duesman also testified during his deposition that, before Plaintiff's action, he was unaware of any instances of VanishPoint needles "shooting or being forced into" patients.  (Doc. 35, p. 43.)  Lastly, in support of Defendant's Motion, Duesman stated in a declaration that, "[w]ithout examining the syringes that Plaintiff . . . alleges to have been injured by . . . it is impossible to determine whether those syringes . . . deviated from specifications and thus, contained a manufacturing defect."  (Doc. 33-2, p. 3; see also doc. 33-1, p. 10.)  Plaintiff disputes the truth of Defendant's statements of material fact that are based on this area of testimony and, without pointing to contrary evidence, asserts the statements are "[o]nly supported by Defendant's self-serving testimony."  (Doc. 42, pp. 36–38.)

Plaintiff identified Dr. John Odom—the surgeon with whom she consulted after the injections in January and March of 2023—as an expert witness.  (Doc. 32-8.)  Dr. Odom drafted a written report stating that, based on his examinations of Plaintiff, he is certain that two needles from VanishPoint syringes are lodged in Plaintiff's body.  (Id. at p. 4.)  Dr. Odom also testified during his deposition that, based on his experience, VanishPoint syringes are "very unforgiving, very unpredictable."  (Doc. 41, p. 230; see also doc. 42, p. 28.)  Specifically, Dr. Odom stated that he found VanishPoint syringes "would retract at inopportune moments," and that they were, from his point of view, "very, very temperamental" because he "would be giving an injection or trying to do something with them, draw fluid out of vial . . . [a]nd they would immediately misfire and retract."  (Doc. 41, p. 212.)  He added that this was something he "did not like about them."  (Id.)

5

Dr. Odom made clear during the deposition, though, that he "never had an instance where the needle lodged into a patient rather than retracting." (Id.) Plaintiff stipulated that Dr. Odom is not an expert on the manufacturing or design specifications of VanishPoint syringes. (Doc. 33-1, p. 8; doc. 42, p. 28; doc. 41, p. 215.)

Both parties filed motions in limine to exclude the other's expert-opinion testimony. (Docs. 32, 34 & 35.) The Magistrate Judge denied both of Plaintiff's motions to exclude Defendant's expert testimony, (docs. 34 & 35). (Doc. 61.) On the other hand, Defendant's motion to exclude the expert testimony of Dr. Odom was granted in part and denied in part. (Id. at pp. 11–19.) The motion was granted as to Defendant's request to exclude Dr. Odom's opinions about the design and manufacturing of the at-issue syringes, (id. at p. 14), and granted as to Defendant's request to exclude Dr. Odom's opinion that a second needle is lodged in Plaintiff's arm, (id. at p. 19). However, the motion was denied as to Defendant's request to exclude Dr. Odom's opinion about the presence of the first needle in Plaintiff's buttocks. (Id. at p. 17.)

Finally, Defendant filed the at-issue Motion for Summary Judgment. (Doc. 33.) Plaintiff filed a Response,[1] (doc. 41), and Defendant filed a Reply, (doc. 52).

## STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing

---

[1] Plaintiff filed her Response on December 4, 2024. (Doc. 41.) This was one day after the applicable deadline set out in the Court's Amended Scheduling Order. (Doc. 27.) After filing the Response, Plaintiff filed a Motion for Leave to File Out of Time. (Doc. 44.) Plaintiff argues that, under Federal Rule of Civil Procedure 6(b)(1)(B), the Court should accept the Response because Plaintiff's untimeliness was due to excusable neglect. (Id.) Defendant does not oppose Plaintiff's Motion. Having considered the law and arguments, and in the exercise of its broad discretion, the Court **GRANTS** Plaintiff's Motion for Leave to File Out of Time. (Doc. 44.)

law.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). The moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge its burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove her case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (citation and emphasis omitted). The Court also may not make

7

credibility determinations, weigh conflicting evidence to resolve disputed facts, or assess the quality of the evidence.  Reese v. Herbert, 527 F.3d 1253, 1271 (11th Cir. 2008).

## DISCUSSION

Plaintiff asserts two Georgia law claims against Defendant: negligent manufacturing and negligent failure to warn.[2]  (Doc. 1-1, pp. 5–6; doc. 33, p. 1.)  "Under Georgia law, a plaintiff asserting a negligence claim must prove: (1) a legal duty to conform to a standard of conduct for the protection of others against an unreasonable risk of harm; (2) breach of that standard; (3) causation; and (4) some loss or damage as a result of the alleged breach of the legal duty." Sharp v. St. Jude Med., S.C., Inc., 838 F. App'x 462, 466 (11th Cir. 2020).  Defendant argues in its Motion that Plaintiff's claims fail because she has not produced sufficient evidence to create at least a dispute of fact on "breach" or "causation."  (Doc. 33, p. 2.)  For the reasons explained below, the Court agrees with Defendant and **GRANTS** its Motion for Summary Judgment as to both of Plaintiff's claims.

**I.  Defendant is Entitled to Summary Judgment on Plaintiff's Negligent Manufacturing Claim.**

An allegation that a product malfunctioned is not sufficient evidence for a negligent manufacturing claim to survive summary judgment.  See, e.g., McClendon v. Manitou Americas, Inc., No. 4:15-cv-250, 2016 WL 5723671, at *3 (S.D. Ga. Sept. 29, 2016) ("As has been noted by the Georgia courts, a mere allegation that brakes malfunctioned is not sufficient to prove a manufacturing defect." (citing Jenkins v. General Motors Corp., 524 S.E.2d 324, 325 (Ga. Ct. App.

---

[2] Plaintiff does not explicitly define her causes of action in the Complaint.  (Doc. 1-1, pp. 5–6.)  However, Defendant states in its Motion for Summary Judgment that "Plaintiff alleges negligent manufacturing and failure to warn claims . . . ."  (Doc. 33, p. 1.)  Plaintiff does not dispute this characterization.  (See generally doc. 41.)  The Court accordingly accepts Defendant's interpretation of Plaintiff's claims.  Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (quoting Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001))).

1999))). Rather, to create a genuine dispute of fact, a plaintiff must show that a reasonable jury could infer from all the record evidence that "there was a defect in the product when it left the manufacturer, the defect was caused by the manufacturer's negligence, and the defect caused her injury." Sheats v. Kroger Co., 784 S.E.2d 442, 446 (Ga. Ct. App. 2016) (citing Boswell v. Overhead Door Corp., 664 S.E.2d 262, 263 (Ga. Ct. App. 2008)); see also Graff v. Baja Marine Corp., No. 2:06–CV–68–WCO, 2007 WL 6900363, at *8 (N.D. Ga. Dec. 21, 2007) (the issue for courts to decide at summary judgment is whether a reasonable jury could infer a manufacturing defect from the existing evidence).

Defendant argues Plaintiff's negligent manufacturing claim fails, first, because she cannot prove a "defect" given that she has neither located the at-issue syringes nor produced admissible expert testimony. (Doc. 33, pp. 9–16.) Further, even if Plaintiff could establish a defect, Defendant contends that her claim would still fail because she cannot show the defect resulted from negligent manufacturing by Defendant. (Id. at pp. 11–12.) Plaintiff responds that, even though she cannot locate the syringes, "a reasonable jury [could find] . . . the subject syringes defective." (Doc. 41, p. 4.) The Court agrees with Defendant and, for the reasons explained below, grants summary judgment on Plaintiff's negligent manufacturing claim.

To prove the first element of a negligent manufacturing claim, "a plaintiff must establish that the product contained a manufacturing defect"—that is, "a deviation from . . . the manufacturer's specifications established for the creation of the product." McClendon, 2016 WL 5723671, at *3 (quoting Jones v. Amazing Prods., Inc., 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002)). Unless an average juror would know from the alleged incident alone that a product deviated from its specifications,[3] this showing requires testimony from a manufacturing expert.

---

[3] Compare Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1316–18 (11th Cir. 2011) (expert testimony required to prove defect in "bioresorbable barrier" inside plaintiff's body because that product's

9

Specifically, the expert must establish "some objective standard . . . [for] the manufacturer's specifications . . . of the product," then demonstrate how the item at issue deviated from that "perfect product." Jones, 231 F. Supp. 2d at 1239.

Defendant argues that Plaintiff cannot create a dispute of fact on "defect" because she has failed to produce admissible expert manufacturing testimony. (Doc. 33, pp. 12–14.) According to Defendant, expert testimony is required here given that "[t]he inner workings of VanishPoint retractable syringes are [] beyond the knowledge of the layperson." (Id. at p. 13.) Defendant points out that there is no expert testimony in the record suggesting the at-issue syringes deviated from an objective standard for their manufacturing specifications. (Id. at pp. 12–14.) Plaintiff, in her Response, neither offers expert manufacturing testimony nor argues that such testimony is not required. (See generally doc. 41.) Instead, she states that "Dr. Odom has used the subject devices countless times in the past and based on his experience and medical education and training, he has determined that these syringes are highly unpredictable and thus not viable instruments for use." (Id. at p. 3.)

The Court agrees with Defendant. Plaintiff does not dispute Defendant's assertion that expert manufacturing testimony is required, and the Court has already ruled Dr. Odom's testimony is not admissible for that purpose. (See doc. 61, pp. 11–19.) Accordingly, because the record contains no expert-opinion evidence suggesting the VanishPoint syringes that allegedly injured Plaintiff deviated from their specifications, a reasonable jury could not infer that they contained a manufacturing defect.

---

intended performance was "outside the ken of a lay witness"), with McDonald v. Mazda Motors of Am., Inc., 603 S.E.2d 456, 461–62 (Ga. Ct. App. 2004) (expert testimony not required to prove defect in rattling car engine when an average person would know a new car is not supposed to make loud rattling noises.); see also O'Shea v. Zimmer Biomet Holdings, Inc., 342 F. Supp. 3d 1354, 1359–63 (N.D. Ga. 2018) (collecting cases).

Furthermore, even if expert manufacturing testimony were not required here, the record evidence would still be insufficient for Plaintiff's claim to survive summary judgment. Plaintiff alleges that she cannot locate the at-issue syringes. (Doc. 33-1, p. 7; doc. 42, p. 26.) Under Georgia law, a plaintiff need not provide the particular items that injured her to prevail on her negligent manufacturing action. See Rose v. Figgie Int'l, Inc., 495 S.E.2d 77, 81–82 (Ga. Ct. App. 1997). Indeed, considering defective products are often "destroyed as a result of an incident," "circumstantial evidence may . . . establish the existence of a manufacturing defect at the time the product left the manufacturer . . . ." Id. at 81. But even assuming Plaintiff avails herself of this rule by having "inadvertently" lost the syringes, there is insufficient circumstantial evidence for her claim to reach a jury.

"A plaintiff relying on circumstantial evidence must 'provide evidence that would permit a jury to select [her] explanation, that of a manufacturing defect, as the most likely cause [of an incident].'" O'Shea v. Zimmer Biomet Holdings, Inc., 342 F. Supp. 3d 1354, 1361 (N.D. Ga. 2018) (quoting Williams v. Mast Biosurgery USA, Inc., 644 F.3d 1312, 1321 (11th Cir. 2011)). To accomplish this—as Plaintiff must here—claimants typically must show that an alleged defect existed when a product left a manufacturer either by admitting expert manufacturing testimony or by demonstrating that goods produced at the same time and place contained the alleged defect. See Rose, 495 S.E.2d at 81; see also Firestone Tire & Rubber Co. v. King, 244 S.E.2d 905, 908 (Ga. Ct. App. 1978). As explained above, no expert manufacturing testimony constitutes "circumstantial evidence" supporting Plaintiff's claim.[4] There is no other circumstantial evidence in the record that would allow Plaintiff to reach a jury without producing the defective syringes.

---

[4] Compare Jenkins, 524 S.E.2d at 324 (absent producing the allegedly defective brakes, plaintiff could not survive summary judgment on circumstantial evidence given there was no expert testimony suggesting brake defect), with Firestone, 244 S.E.2d at 908 (even though tire was destroyed, there was sufficient

11

In <u>Williams v. Wal-Mart Stores East, LP</u>, for instance, a district court granted summary judgment for a manufacturer when a plaintiff shopper failed to produce an allegedly defective grocery bag. 661 F. Supp. 3d at 1270–72. The court observed that the shopper's allegation the bag had ripped and dropped a can onto her foot "only point[ed] to the condition of the bag at the time she picked up the bag at the store." <u>Id.</u> at 1271. Without having the bag itself, the shopper needed to produce circumstantial evidence that "a manufacturing defect [] existed at the time the bag left the manufacturer's possession." <u>Id.</u> The court found the shopper failed in this regard, highlighting that she provided no evidence that "other goods produced during that same time through the same process . . . [also had] the defect." <u>Id.</u> (quoting <u>Rose</u>, 495 S.E.2d at 83); <u>see also</u> <u>Sheats</u>, 784 S.E.2d at 446–47 (affirming summary judgment because, given plaintiff did not produce package that injured her, she was required, but failed, to show its defect existed at the time it left manufacturer's possession); <u>see also</u> <u>Boswell</u>, 664 S.E.2d at 263 (affirming summary judgment when defective door "ha[d] never been located").

Opinions that, alternatively, rule for products liability claimants confirm that Plaintiff's claim fails. In <u>Rose v. Figgie International, Inc.</u>, an apartment resident brought a negligent manufacturing claim after her fire extinguisher spontaneously exploded. 495 S.E.2d at 79. The Georgia Court of Appeals found the trial court abused its discretion in excluding evidence that there were fifty similar incidents involving the same model extinguisher and that, after the resident's incident, the manufacturer issued a recall based on the alleged explosion-defect that included the resident's very extinguisher. <u>Id.</u> at 80–84. The court explained that, given the economies of "mass-produced items," "[a] defect in one such item in its design or manufacture would necessarily occur in thousands of identical products." <u>Id.</u> at 82. Because this "similar-

---

circumstantial evidence to sustain jury verdict where "[t]wo experts testified [that] . . . the failure of the tire was caused by a defect in material or workmanship").

instances" and "recall" evidence showed the explosion-defect existed "in goods produced at the same plant at around the same time," there was sufficient "circumstantial evidence" to establish the resident's destroyed extinguisher contained that defect when it left the manufacturer's possession. Id.

It is clear from these authorities that Plaintiff's negligent manufacturing claim cannot survive summary judgment. Like with the broken grocery bag in Wal-Mart, Plaintiff's allegation that Defendant's VanishPoint syringes "shot through" her buttock and arm and "lodged under her skin" only points to the condition of the syringes at the time her husband administered the shots. See Wal-Mart, 661 F. Supp. 3d at 1271. Given that she has not produced them, Plaintiff was required to provide sufficient circumstantial evidence for a jury to infer that the syringes were defectively manufactured in a way that caused them to shoot their needles into patients when they left Defendant's control. Plaintiff has failed to carry this burden.

The Court finds that, as in Wal-Mart, there is no evidence that other VanishPoint syringes produced at the same time through the same process contained the alleged "shooting" defect. This is true despite Plaintiff's claim in her Response that there was a "recall on one of Defendant's similar retractable needle products due to needle separation," and that "[t]here are [] FDA reports of Vanishpoint syringes themselves malfunctioning and lodging needles in people." (Doc. 41, p. 3.) Having reviewed this potential evidence, the Court agrees with Defendant that the "recall" was for "EasyPoint" syringes rather than the at-issue VanishPoints and was not based on the alleged "shooting" defect but on instances where the EasyPoint's "needle cannula . . . may detach from the needle holder in the patient." (Id. at p. 403.) The "FDA report[]" likewise does not pertain to any "shooting" defect—it instead documents fifteen incidents of the "Vanish point [sic] syringe/needle not retracting." (Id. at p. 407.) Accordingly, unlike in Rose, nothing about the

EasyPoint recall or FDA warnings suggests that other VanishPoint syringes produced during the same time and through the same process as the ones at issue had the alleged "shooting" defect.

To be sure, by alleging that there were two incidents in January and March 2023, Plaintiff implies that two separate VanishPoint syringes contained the same shooting defect. However, even if Plaintiff had argued that the two-incident-nature of her allegation constitutes circumstantial evidence of defect, her claim would still fail. The Rose court only found there was circumstantial evidence of defect when there were "over 50 incidents of spontaneous . . . explosions involving th[e same extinguisher] model," and a post-incident recall for that exact defect that "include[ed] the serial number of [the resident's] extinguisher." 495 S.E.2d at 80. As explained above, there is no comparable evidence in this case. Plaintiff accordingly does not create a reasonable inference that "thousands" of VanishPoint syringes produced at the same time and place had the alleged shooting-defect merely by alleging that the same incident occurred twice. See id. at 82.

Indeed, rather than supporting Plaintiff's claim, the circumstantial evidence before the Court only reinforces that a jury could not reasonably infer the syringes "most likely" had the alleged shooting-defect when they left Defendant's possession. See O'Shea, 342 F. Supp. 3d at 1361. Defendant's manufacturing expert testified that, "[w]ithout examining the syringes that Plaintiff . . . alleges to have been injured by . . . it is impossible to determine whether those syringes . . . deviated from specifications and thus, contained a manufacturing defect." (Doc. 33-2, p. 3; see also doc. 33-1, p. 10.) Defendant's manufacturing expert added that Defendant has never received a complaint (other than from Plaintiff) of a needle separating from a VanishPoint syringe and shooting into a patient. (Doc. 33-1, p. 11; doc. 33-13, p. 5.) He also testified that every VanishPoint syringe is extensively tested before it is sold. (Doc. 33-1, p. 10; doc. 33-13, p. 3.) Further, according to the expert, because the VanishPoint syringe places no forward force on the

14

syringe cannula, for a VanishPoint needle to shoot into someone's body would "defy physics." (Doc. 33, pp. 8–9; doc. 33-13, p. 6.)  Although Plaintiff disputes this testimony, she does not point to substantive evidence that contradicts it.  (See doc. 42, pp. 37–38.)

Considering all the circumstances, Plaintiff's negligent manufacturing claim cannot reach a jury.  This outcome is consistent with the holdings of other courts, which regularly find summary judgment is warranted under similar circumstances.  See, e.g., McClendon, 2016 WL 5723671, at *4 ("Given the present circumstances—a lack of evidence that the brakes were faulty and only a bare allegation that the allegedly faulty brakes caused the accident—the case cannot reach a jury."); Shelton v. GALCO Int'l, Ltd., No. 3:16-cv-00033, 2017 WL 3597497, at *5 (N.D. Ga. 2017) ("Plaintiffs' pleadings allege that the subject holster had a manufacturing defect, but the Court cannot construe an allegation as evidence to justify denying summary judgment."); Boswell, 664 S.E.2d at 263 ("[The] door has never been located, and neither its design nor its specifications has been identified.  This means that Boswell cannot show what the door's design was, whether such design was faulty, whether Overhead Door departed from specifications in the course of manufacturing it, or whether the door was defective when sold.").  Because, in response to Defendant's Motion, Plaintiff has failed to meet her burden of producing sufficient evidence for a reasonable jury to infer that the VanishPoint syringes contained the alleged defect when they left Defendant's control, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's negligent manufacturing claim.

II. **Defendant is Entitled to Summary Judgment on Defendant's Negligent Failure-to-Warn Claim.**

Along with the negligent manufacturing claim, Plaintiff claims that Defendant "fail[ed] to warn purchasers of [the] potential danger of [the] product." (Doc. 1-1, p. 5.)  As best the Court can tell, the "potential danger of [the] product" refers to the VanishPoint syringe's alleged

shooting-defect. (See generally id.) To prevail on a negligent failure-to-warn claim, "Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010) (citing Wheat v. Sofamor, S.N.C., 46 F. Supp. 2d 1351, 1362 (N.D. Ga. 1999)). Defendant argues the Court should grant summary judgment against Plaintiff's failure-to-warn claim because the claim is "derivative of her manufacturing defect theories." (Doc. 33, p. 16.) Plaintiff does not respond to this argument. (See generally doc. 42.)

The Court agrees that summary judgment should be granted to Defendant on Plaintiff's failure-to-warn claim. Plaintiff's failure-to-warn claim is predicated on her allegation that the VanishPoint syringes contained the shooting-defect when they left Defendant's control. Miller v. Ford Motor Co., 653 S.E.2d 82, 85 (Ga. Ct. App. 2007) ("[T]he trial court properly granted summary judgment to Ford on the Millers' negligent manufacturing claim. Likewise, summary judgment was appropriate on their claim for failure to warn, since that claim was predicated on the allegation that the seat belt and side air bag contained an original manufacturing defect."); see also Roper v. Kawasaki Heavy Indus., Ltd., No. 1:13-CV-03661-ELR, 2015 WL 11236553, at *20 (N.D. Ga. June 29, 2015). For the reasons explained above, Plaintiff has failed to provide sufficient evidence to reach a jury on that claim. The Court therefore **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's failure-to-warn claim. Because summary judgment is warranted as to all of Plaintiff's claims against Defendant, Defendant's Motion should be **GRANTED** in its entirety. (Doc. 33.)

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Leave to File Out of Time Response to Defendant's Motion for Summary Judgment, (doc. 44), and **GRANTS** Defendant's Motion for Summary Judgment, (doc. 33). Because there are accordingly no claims remaining against Defendant, the Court **DIRECTS** the Clerk of Court to enter appropriate judgment and close this case.

**SO ORDERED**, this 29th day of September, 2025.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA